**Willie PUCKETT, Plaintiff,**

v.

**Joseph CALIFANO, Secretary of Health, Education and Welfare, Defendant.**

No. C–C–77–084.

United States District Court,
W. D. North Carolina,
Charlotte Division.

March 9, 1978.

Harry B. Crow, Jr., Monroe, N. C., for plaintiff.

Keith S. Snyder (now Harold M. Edwards), U. S. Atty., Charlotte, N. C., for defendant.

ORDER

McMILLAN, District Judge.

Willie Puckett brought this suit contesting the action of the Secretary of Health, Education and Welfare in denying his claim for Social Security benefits.

Puckett's claim (Exhibit 11, R. pp. 46–59), indicates that he was born in 1921, has only a fifth grade education and has been denied a work card by the state because of asbestosis which first began to bother him about 1972 or 1973 and which stopped him from working on July 9, 1975. He stated that as of January 21, 1976, he was "unable to work for any length of time without becoming completely exhausted and weak." He had worked as a card tender in an asbestos plant from October, 1954, to July 9, 1975. He stated that he was "totally disabled." An interviewer's note (R. p. 52) said that

"Claimant appeared to be very uneasy today. Stated that he had walked up one flight of stairs to get to the interviewing room and that he was completely exhausted.

"Claimant appeared to be worried over the fact that he was having to stop work."

Claimant reported (R. p. 56) "I have asbestosis and I am not able to work." He also said that his home duties, social activities and ability to care for his personal needs were limited because:

"Can't do very much because of shortness of breath."

He said he had

"Shortness of breath can not hold out to do much work of any kind."

After denial of benefits by the examiner, plaintiff received a hearing before an administrative law judge on July 13, 1976. The transcript of the hearing occupies nine double-spaced typewritten pages (R. pp. 18–26). The testimony of the plaintiff occupies four and one-half pages (R. pp. 21–26). After admitting various records, including plaintiff's claim as above quoted, the administrative law judge asked the plaintiff only the following questions about his physical condition and ability to work:

"Q. Mr. Puckett, you were born June 15, 1921. Is that right?

"A. Yes.

"Q. And you became unable to work July 9, 1975 because of asbestosis. Is that correct?

"A. Yes.

"Q. Are you married Mr. Puckett?

"A. Yes.

"Q. Does your wife work?

"A. No, sir.

"Q. Do you?

"A. No, sir."

[R. p. 21.]

\*     \*     \*     \*     \*     \*

"Q. Who does the housework, Mr. Puckett?

"A. My wife.

"Q. Who does the grocery shopping?

"A. Well, me and her both.

"Q. And who does the cooking?

"A. She does.

"Q. If you don't work, what do you do all day? How do you put in your time? Watch television, listen to the radio, fish, or what?

"A. I have a little garden and that's it, you know.

"Q. You're talking about a vegetable garden?

"A. Yes.

"Q. That takes up most of your time?

"A. Most of it; yes."

[R. p. 22.]

\*     \*     \*     \*     \*     \*

"Q. How far did you go in school, Mr. Puckett?

"A. Fifth grade.

"Q. What type of work have you done all your life?

"A. Farm, saw mill, mill work.

"Q. When you speak of mill work, are you talking about this asbestos work you did?

"A. That and cotton mill.

"Q. Oh, you were a car (phonetic) attendant. Is that right?

"A. Yes, sir.

"Q. And what did they call your job in—You were a car attender in the asbestos business?

"A. Yes.

"Q. Do this spin that?

"A. Yes.

"Q. I didn't know that.

"A. They have twisters.

"Q. You run it just like you do any other tread?

"A. Twisters and speeders; yes."

[R. pp. 23–24.]

No doctor testified.

Puckett was the only witness.

Puckett was not represented by counsel.

Puckett's request for reconsideration dated February 9, 1976 (Exhibit 4, R. p. 35) read as follows:

"I can not do very much work because of shortness of breath. I can't hold out to walk very much without stopping to rest. Other employers will not hire you to work after they find out you were dismissed from your job by the State Board of Health. They do not want to carry insurance on people that have already been dismissed from their jobs because of their health. I have worked all these years and paid in Social Security and now that I can't work I think I am entitled to receive it."

The routine letter of August 25, 1975, from the North Carolina Industrial Commission read in pertinent part as follows:

"The Commission has approved the agreement on I.C. Form 21, providing for payment of compensation for 104 weeks at the rate of $30.00 per week beginning

July 10, 1975, a copy of which agreement is returned herewith. In view of the agreement, we are removing this case from our hearing docket at this time.

"The claimant, Mr. Puckett, is required to have another examination in June of 1976 and a final examination in June of 1977. During this period of 104 weeks, the Commission has directed that *claimant stay out of the dusty trades and not expose himself further to the hazards of asbestosis,* and he *is encouraged to try to rehabilitate himself* in some non-dusty occupation or trade. We refer Mr. Puckett to Mr. S. P. Weathersbee, Administrative Counselor, Division of Vocational Rehabilitation Services, 328 South First Street, Albemarle, to whom he may apply or with whom he may confer for assistance along those lines." (R. p. 44.)

Puckett (R. p. 62), in a supplementary statement, described his medical condition in February of 1976 as "Short winded, chest hurts, coughs, stomach trouble, legs hurt due to varicose veins and kidney stones." It also indicated that he had not worked since filing his application, "due to health."

Medical reports were received from several doctors:

Dr. Ozmer L. Henry, Jr., Medical Director of the Western Unit, North Carolina Specialty Hospitals, as of June 10, 1975, recited a history (R. pp. 64–65) that plaintiff "did saw mill work from 1946 to about 1948" and was in the Army three years and four months before 1948. He had been short-winded for several years. The shortness of breath was getting worse. He had a cough which was worse during the morning hours and occasionally coughed blood. He had an occasional heavy feeling in his chest. His history included treatment for an ulcer, for anemia and for kidney stones. He was slightly overweight at 203 pounds. X-ray studies showed asbestosis, grade 1, with an "employment disability" of 40% and pulmonary function studies varying from 65% to 83% of predicted capacities. Patient was ordered to have no more exposure to asbestos dust.

Seven months later, on January 21, 1976, Dr. Joe E. Greene, his attending physician, reported (R. p. 66) as follows:

"TO WHOM IT MAY CONCERN:

Re: Willie Puckett

"The above individual is totally and permanently disabled due to: 1. Asbestosis Grade II 2. Emphysema, moderately severe. He is disabled for pursuing any gainful employment."

Dr. E. F. Hamer of Monroe reported treating the patient in February, 1976, for gastritis and high blood pressure, both of which improved under his treatment period of about two months.

The final report by the Advisory Medical Committee to North Carolina Industrial Commission (R. pp. 71–72) described essentially the same clinical symptoms that Dr. Henry had originally found in June of 1975. (The history is almost a copy of the 1975 history.) It concluded with the following:

". . . Pulmonary function studies: FVC 2.36 L or 61% of predicted values. FEV 1, 1.96 L or 73% of predicted. FEV 1/FVC·X 100, 83% (predicted 70%.) FEF 25/75, 154 L/Min. MBC 81 L/Min. or 67% of predicted. Lung volumes: VC 2,460 cc. or 63% of predicted. FRC 2,170 cc. or 81% of predicted. RV 1,530 cc. or 74% of predicted. TLC 3,990 cc. or 67% of predicted. RV/TLC 38% (predicted 20–30%.)

"Chest x-ray shows fine, interstitial fibrosis of the lungs, predominately in the mid and lower lung fields, unchanged since the study of 1975.

"It is our impression that this man has Asbestosis, Grade I.

"It is our impression that he is 40% disabled from employment in his previous or any other occupation.

"It is our impression that he should have no further exposure to asbestos dust."

There was a total lack of information or evidence, other than the testimony of plaintiff and his wife, whether plaintiff could do things other than his asbestos trade in which he had worked for the last twenty-five years. There was no evidence that he could do any work presently being done on farms or in saw mills. There was no evi-

dence that the condition of asbestosis grade I as the Advisory Medical Commission reported, or grade II as Dr. Greene reported, was such that he could pursue any gainful employment or that there was gainful employment available for him in the labor market. In short, there is substantially nothing in the record to rebut Dr. Greene's opinion that the patient "is disabled for pursuing any gainful employment."

On this record the administrative law judge found as follows:

"1. The claimant met the special earnings requirements for disability purposes under the provisions of the Social Security Act, as amended, on the alleged date of onset of disability, July 9, 1975, and continues to meet such requirements through June 30, 1980.

"2. The claimant was not under a 'disability', as this term is defined in the Social Security Act, as amended, at any time prior to the date of this decision.

"3. The evidence fails to establish that the claimant's impairments were of such severity as to prevent him from engaging in any substantial gainful activity at any time prior to the date of this decision, or for any continuous period prior to the date of this decision which lasted or could be expected to last for at least 12 months.

"4. The claimant has a fifth grade education and has worked as a farmer and in a sawmill. He is still capable of performing the duties of these occupations."

[R. pp. 11–12.]

On the strength of those findings benefits were denied.

## DISCUSSION

There is a total lack of competent evidence to show that the plaintiff is able to do any gainful work that is available to him in the economy. There is unconditional evidence that plaintiff is totally disabled for any gainful employment. The award is unsupported by the evidence and is contrary to the weight of the evidence.

If there were serious doubt about how this case is eventually going to end up, it could be worth sending the file back to the Secretary for a re-determination under new evidence. If the Secretary so requests, I will consider such a step.

However, the occupational disease of asbestosis, once established, is progressive in nature. Plaintiff's eligibility period extends until July 9, 1980, which is two and one-half years in the future. It is not unreasonable to believe that more physical examinations would produce more evidence of increased and increasing disability.

Furthermore, the burden is not upon the plaintiff on this record to establish the nonexistence of any job he can perform: he has established his total disability to do the job he was doing in the asbestos plant and he has established strong evidence of total disability to do any job requiring physical capacity. Under these circumstances it is the burden of the Secretary, not the plaintiff, to come forward with evidence about jobs in the economy that the plaintiff, with his education and physical limitations, is able to do. The Secretary has not only failed to do this, but, with an unrepresented claimant, no evidence whatever of job availability was offered or elicited.

Under the circumstances the Secretary has failed to carry the burden placed upon him by the statutes and decisions, and plaintiff should not now be put to the burden of trying once again to climb the bureaucratic mountain.

The decision of the Secretary is reversed, and the Secretary is instructed to compute and pay benefits for the appropriate period of disability.